**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                    :

DUNKIN' DONUTS FRANCHISING LLC,        :
DD IP HOLDER LLC,                    :
DB REAL ESTATE ASSETS I LLC and       :
DB REAL ESTATE ASSETS II LLC,          :
                                                    :

                          Plaintiffs,      :
                                                    :  Case No.

              v.                            :
                                                      :
ROCHESTER RIDGE DONUTS, INC.,        :
ROCHESTER DEWEY DONUTS, INC. and   :
SAMIR BELHSEINE,                 :
                                                    :

                           Defendants.    :
                                                      :
-------------------------------------------------------------X

<u>**COMPLAINT**</u>

      Plaintiffs Dunkin' Donuts Franchising LLC, DD IP Holder LLC, DB REAL ESTATE

ASSETS I LLC and DB REAL ESTATE ASSETS II LLC, by their attorneys, O'ROURKE &

DEGEN, PLLC, as and for their complaint, allege as follows:

<u>**INTRODUCTION**</u>

      1.     Plaintiff Dunkin' Donuts Franchising LLC is the franchisor of Dunkin' Donuts

franchises and the licensee of the Dunkin' Donuts trademarks.   Plaintiff DD IP Holder LLC is the

holder of the Dunkin' Donuts trademarks.   Plaintiffs DB Real Estate Assets I LLC and DB Real

Estate Assets II LLC are the lessors of some of the locations of Dunkin' Donuts restaurants.

      2.     Defendants are the owners and operators of two Dunkin' Donuts restaurants located

in the Western District of New York.

      3.     Plaintiffs terminated Defendants' Franchise Agreements, based upon their being in

default after having received three separate notices to cure defaults in paying franchise fees and

advertising fees in less than one year.   Plaintiffs terminated Defendants' Leases, based upon their

being in default after their receipt of two separate notices to cure defaults within the same Lease

Year and because of the termination of their Franchise Agreements.

4.      Defendants continue to use the name, trademarks and service marks of "Dunkin'

Donuts" and to occupy the premises of their former Dunkin' Donuts restaurants without

authorization to do so and have not removed the signs and other indicia that the sites were Dunkin'

Donuts restaurants.

## THE PARTIES

5.      Plaintiff Dunkin' Donuts Franchising LLC is a foreign limited liability company,

duly organized and existing by virtue of the laws of the State of Delaware, with its principal place

of business in Canton, Massachusetts, and is authorized to do business in the State of New York.

6.      Plaintiff DD IP Holder LLC is a foreign limited liability company, duly organized

and existing by virtue of the laws of the State of Delaware, with its principal place of business in

Canton, Massachusetts.

7.      Plaintiff DB Real Estate Assets I LLC is a foreign limited liability company, duly

organized and existing by virtue of the laws of the State of Delaware, with its principal place of

business in Canton, Massachusetts, and is authorized to do business in the State of New York.

8.      Plaintiff DB Real Estate Assets II LLC is a foreign limited liability company, duly

organized and existing by virtue of the laws of the State of Delaware, with its principal place of

business in Canton, Massachusetts, and is authorized to do business in the State of New York.

9.      Upon information and belief, Defendant Rochester Ridge Donuts, Inc. is a

domestic corporation, duly organized and existing by virtue of the laws of the State of New York,

with a place of business in the County of Monroe, State of New York.

10.     Upon information and belief, Defendant Rochester Dewey Donuts, Inc. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Monroe, State of New York.

11.     Upon information and belief, Defendant Samir Belhseine is a resident of the County of Monroe, State of New York, with a place of business in the County of Monroe, State of New York.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C, §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332, 1338 & 1367(A).   The amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Venue in the Western District of New York is based upon 28 U.S.C. § 1391(b).

## DUNKIN' DONUTS TRADEMARKS, SERVICE MARKS AND PROPRIETARY MARKS

14.     DD IP Holder LLC owns the trademark, service mark and trade name "Dunkin' Donuts," which is registered on the Principal Register of the United States Patent Office, to identify for the public the source of goods and services marketed under its name, as well as related marks.

15.     Dunkin' Donuts Franchising LLC ("Dunkin' Donuts") has the license to use and to license others to use the Dunkin' Donuts marks and trade name and since approximately 1950 it and its predecessors in interest have used them continuously to identify their doughnut restaurants and the doughnuts, pastries, coffee and other products associated with those restaurants.

16.     DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts and related marks.   Among these registrations are Registration Nos. 5,417,464, 4,600,316, 2,748,147, 1,148,165 and 1,159,354.   Each of these registrations is in full force and

effect and is incontestable pursuant to 15 U.S.C. § 1065.

17.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

18.     The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

19.     The Dunkin' Donuts marks have been widely advertised and promoted by Dunkin' Donuts.   Between 1971 and 2016, Dunkin' Donuts and its franchisees spent over $4 billion on advertising and promoting the Dunkin' Donuts marks.   In 2017 Dunkin' Donuts spent approximately $476,157,000 on advertising and promotion.

20.     As of the end of 2017, Dunkin' Donuts and its franchisees had 9141 points of distribution in the United States and 3,397 outside the United States.   Dunkin' Donuts shops feature Dunkin' Donuts distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection, names, interior design and doughnut cases.   Since the Dunkin' Donuts System began more than 65 years ago, hundreds of millions of customers have been served in Dunkin' Donuts restaurants.

21.     As a result of the extensive sales, advertising and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with the products and services offered by Dunkin' Donuts and its franchisees.   The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts and DD IP Holder LLC, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

## THE FRANCHISE AGREEMENTS

22.     On May 23, 2012, Dunkin' Donuts Franchising LLC entered into a Franchise

4

Agreement (collectively with any amendments the "Ridge Road Franchise Agreement") with Rochester Ridge Donuts, Inc.

23.     The Ridge Road Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 277 Ridge Road E, Rochester, New York (the "Ridge Road Premises").

24.     On September 7, 2011, Dunkin' Donuts Franchising LLC entered into a Franchise Agreement (collectively with any amendments the "Dewey Avenue Franchise Agreement") with Rochester Dewey Donuts, Inc.

25.     The Dewey Avenue Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 3665 Dewey Avenue, Greece, New York (the "Dewey Avenue Premises).

## THE LEASES

26.     On January 27, 1992, Dunkin' Donuts of New York, Inc., predecessor in interest of DB Real Estate Assets I LLC, entered into a Lease (collectively with any amendments the "Ridge Road Lease") with Ashish Inc., predecessor in interest of Rochester Ridge Donuts, Inc.

27.     The Ridge Road Lease authorized Defendant to occupy the Ridge Road Premises and to utilize them for the operation of a Dunkin' Donuts restaurant.

28.     On March 1, 1991, Seventh Dunkin' Donuts Realty, Inc., predecessor in interest of DB Real Estate Assets II LLC, entered into a Lease (collectively with any amendments the "Dewey Avenue Lease") with Maulesh Incorporated, predecessor in interest of Dewey Avenue Donuts, Inc.

29.     The Dewey Avenue Lease authorized Defendant to occupy the Dewey Avenue Premises and to utilize them for the operation of a Dunkin' Donuts restaurant.

## THE GUARANTEES

30.     Simultaneously with the execution of the Ridge Road Franchise Agreement and the Dewey Avenue Franchise Agreement, Samir Belhseine signed personal guarantees (the "Belhseine Franchise Agreement Guarantees") by which he personally guaranteed to Dunkin' Donuts that Rochester Ridge Road Donuts, Inc. and, Rochester Dewey Donuts, Inc. will fully and promptly pay and discharge all their present and future obligations to Dunkin' Donuts under the Ridge Road and the Dewey Avenue Franchise Agreements (collectively the Belhseine Franchise Agreements).

31.     Simultaneously with the execution of the Second Amendment to the Ridge Road Lease and the Second Amendment to the Dewey Avenue Lease, Samir Belhseine signed personal guarantees (the "Belhseine Lease Guarantees") by which he unconditionally guaranteed to DB Realty I and DB Realty II (collectively "DB Realty") the performance of all duties and obligations of Tenant under the Leases and that he personally agreed that the Leases will be binding upon him personally, as if he were the Tenant.

## OBLIGATIONS UNDER THE BELHSEINE FRANCHISE AGREEMENTS

32.     Pursuant to Section 5.8 of the Belhseine Franchise Agreements, Defendants agreed that they would participate in Dunkin' Donuts' specified program or procedure for sales reporting and payment of fees.

33.     In Sections 5.2 and 5.3 of the Belhseine Franchise Agreements, Defendants agreed that on or before Thursday of each week they would pay Dunkin' Donuts a Continuing Franchise Fee and a Continuing Advertising Fee for the seven-day period ending at the close of business on Saturday, twelve days previous, computed by multiplying the Gross Sales by the Continuing Franchise Fee percentage rate and the Continuing Advertising Fee percentage rate stated in the

Contract Data Schedules of the Belhseine Franchise Agreements.

34. Item E1 of the Contract Data Schedule of the Ridge Road Franchise Agreement states that the Continuing Franchise Fee rate is 4.9% of Gross Sales through January 1, 2016 and 5.9% of Gross Sales, effective January 2, 2016.

35. Item E1 of the Contract Data Schedule of the Dewey Avenue Franchise Agreement states that the Continuing Franchise Fee rate is 4.9% of Gross Sales through May 31, 2019 and 5.9% of Gross Sales, effective June 1, 2019

36. Item F of the Belhseine Franchise Agreements provides that the Continuing Advertising Fee Rate is 5.9% of Gross Sales.

37. Section 14.1.2 of the Belhseine Franchise Agreements provides that the Franchisee must cure a default in payment within seven days of its receipt of a notice to cure.

38. Section 14.6 of the Belhseine Franchise Agreements gives Dunkin' Donuts the right to terminate the Belhseine Franchise Agreements if a default in payment is not timely cured.

39. Pursuant to Section 14.2 of the Belhseine Franchise Agreements, "no cure period shall be available for any default if you already have received three (3) or more previous notices-to-cure for the same or substantially similar default (whether or not you have cured the default), within the immediately preceding twelve (12) month period."

40. Section 14.6 of the Belhseine Franchise Agreements gives Dunkin' Donuts the right to terminate the Belhseine Franchise Agreements if a default referenced in section 14.2 is committed.

## OBLIGATIONS UNDER THE BELHSEINE LEASES

41. In paragraph 3 of the Second Amendment of the Ridge Road Lease and the Second Amendment of the Dewey Avenue Lease (collectively the "Belhseine Leases"), Defendants

agreed to pay Base Rent in advance on the 15th day of each month immediately preceding the month for which such Base Rent is due.

42.     In paragraph 8.(b) of the Addendum to each of the Belhseine Leases, Defendants agreed to make monthly payments of one-twelfth of the estimated yearly real estate taxes with the Base Rent.

43.     In paragraphs 4 and 5 of the Ridge Road Lease and paragraph 5 of the Dewey Avenue Lease and paragraph 4 of the First Amendment of the Dewey Avenue Lease, Defendants agreed to pay percentage rent based upon a percentage of their Gross Sales.

44.     Paragraph 19(b)(1) of the Belhseine Leases provides that Defendants shall be in default if they fail to timely cure a default in payment.

45.     Paragraph 19(d) of the Belhseine Leases gives DB Realty the right to terminate the Belhseine Leases if a default in payment is not cured within ten days after Defendants' receipt of a written notice to cure.

46.     According to paragraph 15(a) of the Belhseine Leases, they are subject to the respective Belhseine Franchise Agreement remaining in full force and effect, so that if a Franchise Agreement is terminated for any reason, then DB Realty shall have the right to terminate the corresponding Belhseine Lease.

47.     Pursuant to paragraph 19(d) of the Belhseine Leases, if DB Realty has given Defendants two separate notices to cure because of two distinct defaults in the case of nonpayment of base rent or percentage rent in any Lease Year, then for the balance of the term of the Leases, DB Realty can terminate the Belhseine Leases, should Defendants thereafter default in making Lease payments, without giving Defendants any additional written notice to cure the defaults.

48.     The previous and current Lease Years of the Ridge Road Lease ran from April 16,

2017 to April 14, 2018 and from April 15, 2018 to April 13, 2019.

49.     The previous and current Lease Years for the Dewey Avenue Lease ran from February 19, 2017 to February 17, 2018, and from February 18, 2018 to February 16, 2019.

## THE DEFAULT NOTICES

50.     On October 12, 2017, November 28, 2017 and February 15, 2018, pursuant to the Ridge Road Franchise Agreement and the Ridge Road Lease, Dunkin' Donuts and DB Realty I sent Defendants Ridge Road Donuts, Inc. and Samir Belhseine three separate Notices to Cure (the "Ridge Road Notices to Cure") by overnight carrier to the Ridge Road Premises and to the Dewey Avenue Premises.

51.     The Ridge Road Notices to Cure demanded that Defendants cure defaults in paying franchise fees, advertising fees, insufficient funds charges, rent, percentage rent and other charges.

52.     Upon information and belief, on October 13, 2017, November 29, 2017 and February 16, 2018, respectively, Defendants received the Ridge Road Notices to Cure.

53.     On October 12, 2017, November 28, 2017 and February 15, 2018, pursuant to the Dewey Avenue Franchise Agreement and the Dewey Avenue Lease, Dunkin' Donuts and DB Realty II sent Defendants Dewey Avenue Donuts, Inc. and Samir Belhseine three separate Notices to Cure (the "Dewey Avenue Notices to Cure") by overnight carrier to the Dewey Avenue Premises.

54.     The Dewey Avenue Notices to Cure demanded that Defendants cure defaults in paying franchise fees, advertising fees, insufficient funds charges, rent, percentage rent and other charges.

55.     Upon information and belief, on October 13, 2017, November 29, 2017 and February 16, 2018, respectively, Defendants received the Dewey Avenue Notices to Cure.

**TERMINATION OF THE BELHSEINE FRANCHISE AGREEMENTS AND LEASES**

56.     On May 16, 2018, Defendants were in default in payments due Plaintiffs under the Belhseine Franchise Agreements and the Belhseine Leases.

57.     On May 16, 2018, pursuant to the Ridge Road Franchise Agreement and the Ridge Road Lease, Dunkin' Donuts and DB Realty I sent Defendants Ridge Road Donuts, Inc. and Samir Belhseine a Notice of Termination (the "Ridge Road Notice of Termination") by overnight carrier to the Ridge Road Premises and the Dewey Avenue Premises.

58.     Upon information and belief, on May 17, 2018, Defendants received the Ridge Road Notice of Termination.

59.     The Ridge Road Notice of Termination terminated the Ridge Road Franchise Agreement, effective immediately upon receipt of the Notice, based upon the receipt by Ridge Road Donuts, Inc. of three separate notices to cure within the previous twelve-month period.

60.     The Ridge Road Notice of Termination terminated the Ridge Road Lease, effective immediately upon receipt of the Notice, based upon the receipt by Ridge Road Donuts, Inc. of two or more separate notices to cure within one Lease Year and because of the termination of the Ridge Road Franchise Agreement.

61.     On May 16, 2018, pursuant to the Dewey Avenue Franchise Agreement and the Dewey Avenue Lease, Dunkin' Donuts and DB Realty II sent Defendants Dewey Avenue Donuts, Inc. and Samir Belhseine a Notice of Termination (the "Dewey Avenue Notice of Termination") by overnight carrier to the Dewey Avenue Premises

62.     Upon information and belief, on May 17, 2018, Defendants received the Dewey Avenue Notice of Termination.

63.     The Dewey Avenue Notice of Termination terminated the Dewey Avenue

Franchise Agreement, effective immediately upon receipt of the Notice, based upon the receipt by

Dewey Avenue Donuts, Inc. of three separate notices to cure within the previous twelve-month

period.

64.     The Dewey Avenue Notice of Termination terminated the Dewey Avenue Lease,

effective immediately upon receipt of the Notice, based upon the receipt by Dewey Avenue

Donuts, Inc. of two or more separate notices to cure within one Lease Year and because of the

termination of the Dewey Avenue Franchise Agreement.

## OBLIGATIONS FOLLOWING TERMINATION OF THE FRANCHISE AGREEMENTS

65.     In the Belhseine Franchise Agreements Defendants agreed that they would not do

or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with

Plaintiffs' proprietary marks and the Dunkin' Donuts System.   § 10.1.   In addition, Defendants

agreed that following the termination of the Belhseine Franchise Agreements, they would

immediately stop representing themselves to the public as Dunkin' Donuts franchises and would

cease using the Dunkin' Donuts proprietary marks, trade secrets, confidential information and

manuals.   § 14.7.2, 14.7.3.

66.     Defendants acknowledged that their use of Plaintiffs' proprietary marks following

the termination of the Belhseine Franchise Agreements "will be deemed to threaten immediate and

substantial irreparable injury" and give Plaintiffs "the right to obtain immediate injunctive relief."

§ 10.4.

67.     Defendants further agreed that upon the termination of the Belhseine Franchise

Agreements, they would pay all money owed to Plaintiffs and return all originals and copies of

Plaintiffs' operating manuals, plans, specifications and other materials relating to the operation of

the Dunkin' Donuts restaurants.   § 14.7.1, 14.7.4.

11

## OBLIGATION TO PAY PLAINTIFFS' ATTORNEY'S FEES AND COSTS

68.     The Belhseine Franchise Agreements provide that if they are terminated by reason of the failure of Defendants to cure a default, then Defendants shall pay all damages, costs and expenses, including attorney's fees, incurred by Plaintiffs as a result thereof.   § 14.4.4.

69.     Defendants also agreed that should they fail to timely remit monies due under the Belhseine Franchise Agreements, they would pay Plaintiffs' collection costs, reasonable attorney's fees, and interest on the unpaid amounts.   § 5.7.

70.     Pursuant to paragraph 18(c) of the Belhseine Leases, Defendants agreed to pay all of DB Realty's costs, charges and expenses, including reasonable attorney's fees, court costs and fees of agents and others retained by DB Realty incident to the enforcement of any of Defendants' obligations under the Belhseine Leases.

71.     Plaintiffs have incurred and are incurring costs and expenses, including attorney's fees, as a result of Defendants' breach of the Belhseine Franchise Agreements and Leases.

## COUNT 1
### Breach of Contract – Ridge Road Franchise Agreement
### (termination and injunction)

72.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 71 of the complaint as if fully set forth herein.

73.     The default in payment by Defendant Ridge Road Donuts, Inc., after having received the Ridge Road Notices to Cure, constitutes a breach of its obligations under the Ridge Road Franchise Agreement.

74.     The breach of the Ridge Road Franchise Agreement provides good cause for terminating the Ridge Road Franchise Agreement.

75.     Dunkin' Donuts terminated the Ridge Road Franchise Agreement and demanded

that Defendant comply with its post-termination provisions.

76.     Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the Ridge Road Franchise Agreement.

77.     As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer irreparable harm and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 2
### Breach of Contract – Dewey Avenue Franchise Agreement
### (termination and injunction)

78.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 77 of the complaint as if fully set forth herein

79.     The default in payment by Defendant Dewey Avenue Donuts, Inc., after having received the Dewey Avenue Notices to Cure, constitutes a breach of its obligations under the Dewey Avenue Franchise Agreement.

80.     The breach of the Dewey Avenue Franchise Agreement provides good cause for terminating the Dewey Avenue Franchise Agreement.

81.     Dunkin' Donuts terminated the Dewey Avenue Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

82.     Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the Dewey Avenue Franchise Agreement.

83.     As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer irreparable harm and have incurred and are continuing to

incur monetary damages in an amount yet to be determined.

## COUNT 3
### Breach of Contract – Ridge Road Lease
### (termination and injunction)

84.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 83 of the complaint as if fully set forth herein

85.     The default in payment by Defendant Ridge Road Donuts, Inc., after having received the Ridge Road Lease Notices to Cure, constitutes a breach of its obligations under the Ridge Road Lease.

86.     The breach of the Ridge Road Lease provides good cause for terminating the Ridge Road Lease.

87.     DB Realty I terminated the Ridge Road Lease and demanded that Defendant vacate the Ridge Road Premises and surrender possession thereof to it.

88.     Defendant has refused to vacate the Ridge Road Premises and to surrender possession thereof to DB Realty I.

89.     As a result of Defendant's actions, DB Realty I is suffering and continues to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount yet to be determined.

## COUNT 4
### Breach of Contract – Dewey Avenue Lease
### (termination and injunction)

90.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 89 of the complaint as if fully set forth herein.

91.     The default in payment by Defendant Dewey Avenue Donuts, Inc., after having received the Dewey Avenue Notices to Cure, constitutes a breach of its obligations under the

Dewey Avenue Lease.

92.    The breach of the Dewey Avenue Lease provides good cause for terminating the Dewey Avenue Lease.

93.    DB Realty II terminated the Dewey Avenue Lease and demanded that Defendant vacate the Dewey Avenue Premises and surrender possession thereof to it.

94.    Defendant has refused to vacate the Dewey Avenue Premises and to surrender possession thereof to DB Realty II.

95.    As a result of Defendant's actions, DB Realty II is suffering and continues to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount yet to be determined.

**COUNT 5**
**Breach of Contract – Ridge Road Lease**
**(termination and injunction based upon termination of Franchise Agreement)**

96.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 95 of the complaint as if fully set forth herein

97.    The termination of the Ridge Road Franchise Agreement constitutes grounds for terminating the Ridge Road Lease.

98.    DB Realty I terminated the Ridge Road Lease, based upon the termination of the Ridge Road Franchise Agreement, and demanded that Defendant vacate the Ridge Road Premises and surrender possession thereof to it.

99.    Defendant has refused to vacate the Ridge Road Premises and to surrender possession thereof to DB Realty I.

100.    As a result of Defendant's actions, DB Realty I is suffering and continues to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount yet to

be determined.

## COUNT 6
### Breach of Contract – Dewey Avenue Lease
### (termination and injunction based upon termination of Franchise Agreement)

101.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 100 of the complaint as if fully set forth herein.

102.     The termination of the Dewey Avenue Franchise Agreement constitutes grounds for terminating the Dewey Avenue Lease.

103.     DB Realty II terminated the Dewey Avenue Lease, based upon the termination of the Dewey Avenue Franchise Agreement, and demanded that Defendant vacate the Dewey Avenue Premises and surrender possession thereof to it.

104.     Defendant has refused to vacate the Dewey Avenue Premises and to surrender possession thereof to DB Realty II.

105.     As a result of Defendant's actions, DB Realty II is suffering and continues to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount yet to be determined.

## COUNT 7
### Breach of Contract – Ridge Road Franchise Agreement
### (receivables)

106.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 105 of the complaint as if fully set forth herein.

107.     Defendant Ridge Road Donuts, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the Ridge Road Franchise Agreement, although due demand has been made for the same.

108.     As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an

amount to be determined at trial for all monies now due and which hereafter become due under the

Ridge Road Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 8
### Breach of Contract – Dewey Avenue Franchise Agreement
### (receivables)

109.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 108

of the complaint as if fully set forth herein.

110.    Defendant Dewey Avenue Donuts, Inc. has failed to pay Dunkin' Donuts franchise

fees, advertising fees, late charges, attorney's fees and costs due under the Dewey Avenue

Franchise Agreement, although due demand has been made for the same.

111.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an

amount to be determined at trial for all monies now due and which hereafter become due under the

Dewey Avenue Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 9
### Breach of Contract – Ridge Road Lease
### (receivables)

112.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 111

of the complaint as if fully set forth herein.

113.    Defendant Ridge Road Donuts, Inc. has failed to pay rent, percentage rent, taxes,

other additional rent, late charges, attorney's fees and costs due under the Ridge Road Lease,

although due demand has been made for the same.

114.    As a result of Defendant's actions, DB Realty I is entitled to a judgment in an

amount to be determined at trial for all monies now due and which hereafter become due under the

Ridge Road Lease, plus interest, attorney's fees and costs.

**COUNT 10**
**Breach of Contract – Dewey Avenue Lease**
**(receivables)**

115.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 114

of the complaint as if fully set forth herein.

116.     Defendant Dewey Avenue Donuts, Inc. has failed to pay rent, percentage rent,

taxes, other additional rent, late charges, attorney's fees and costs due under the Dewey Avenue

Lease, although due demand has been made for the same.

117.     As a result of Defendant's actions, DB Realty II is entitled to a judgment in an

amount to be determined at trial for all monies now due and which hereafter become due under the

Dewey Avenue Lease, plus interest, attorney's fees and costs.

**COUNT 11**
**(Breach of Contract – Belhseine Guarantees)**

118.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 117

of the complaint as if fully set forth herein.

119.     Defendant Samir Belhseine has failed to pay the monies due under the Belhseine

Franchise Agreement Guaranties and the Belhseine Lease Guarantees, although due demand has

been made for the same.

120.     As a result of Defendant's actions, Plaintiffs are entitled to a judgment in an amount

to be determined at trial, plus interest, attorney's fees and costs.

**COUNT 12**
**Trademark Infringement**

121.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 120

of the complaint as if fully set forth herein.

122.     The use in commerce by Defendants of the Dunkin' Donuts trademarks and trade

name without the consent of Dunkin' Donuts is likely to confuse or deceive the public into

believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised,

sponsored, authorized, or otherwise approved by Dunkin' Donuts.

123.    Such continued use of the Dunkin' Donuts trademarks and trade name infringes

upon the rights of Dunkin' Donuts and DD IP Holder LLC in the Dunkin' Donuts trademarks under

§ 32 of the Lanham Act (15 U.S.C. § 1114) and applicable state law.

124.    Defendants' acts were done knowingly and intentionally to cause confusion, or to

cause mistake, or to deceive.

125.    As a result of Defendants' infringement of the Dunkin' Donuts trademarks and trade

name, Dunkin' Donuts and DD IP Holder have suffered and are continuing to suffer substantial and

irreparable harm to the goodwill associated with the Dunkin' Donuts trademarks and trade name

and have incurred and are continuing to incur monetary damages in an amount yet to be

determined.

## COUNT 13
## Unfair Competition

126.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 125

of the complaint as if fully set forth herein.

127.    The use in commerce by Defendants of the Dunkin' Donuts trademarks and trade

name without the consent of Dunkin' Donuts is likely to cause confusion, or to cause mistake, or to

deceive the public as to the origin, sponsorship or approval of its goods, services or commercial

activities.

128.    Such continued unauthorized use of the Dunkin' Donuts trademarks and trade name

violates § 43 of the Lanham Act (15 U.S.C. § 1125(a)) and applicable state law.

129.    Defendants' acts were done knowingly and intentionally to cause confusion, or to

cause mistake, or to deceive.

130.    As a result of Defendants' unfair competition, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trademarks and trade name and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 14
## Trade Dress Infringement

131.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 130 of the complaint as if fully set forth herein.

132.    Defendants' restaurants are identified by signs, exterior appearance, and other items on which the words "DUNKIN' DONUTS" appear in the same "frankfurter" lettering style and in the same distinctive color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

133.    Defendants' use of the trade dress that is identical or confusingly similar to Dunkin' Donuts' trade dress constitutes a false designation of the origin of their shops which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection or association of Defendants' restaurants with the Dunkin' Donuts restaurants operated by Dunkin' Donuts licensees.

134.    Defendants' adoption of the Dunkin' Donuts trade dress violates § 43 of the Lanham Act (15 U.S.C. § 1125) and applicable state law.

135.    Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

136.    As a result of Defendants' infringement of Dunkin' Donuts' trade dress, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer irreparable injury and

have incurred and are continuing to incur monetary damages in an amount yet to be determined.

WHEREFORE, Plaintiffs pray that this Court:

A.      Enter a judgment declaring that the Belhseine Franchise Agreements are terminated *nunc pro tunc*; and

B.      Enter an injunctive order enjoining Defendants, their employees, agents, servants, or persons acting on their behalf from using the trademarks, trade name and trade dress of Dunkin' Donuts and from holding themselves out to the public as, and from operating as, Dunkin' Donuts franchisees, and requiring them to remove all signs, logos, names and other indicia that their restaurants are or were Dunkin' Donuts restaurants, requiring them to return all manuals to Dunkin' Donuts, and requiring them to cease engaging in unfair competition; and

C.      Enter an injunctive order ratifying and enforcing the termination of the Belhseine Franchise Agreements and directing Defendants to comply with their post-termination obligations thereunder *nunc pro tunc*; and

D.      Enter an injunctive order ratifying and enforcing the termination of the Belhseine Leases and directing Defendants to comply with their post-termination obligations thereunder *nunc pro tunc*; and

E.      Enter a judgment of possession and issue an order directing Defendants to vacate the Ridge Road Premises and the Dewey Avenue Premises and to surrender possession thereof to DB Realty I and DB Realty II; and

F.      Enter a judgment in favor of Plaintiffs and against Defendants for the damages incurred by Plaintiffs as a result of Defendants' breaches of the Belhseine Franchise Agreements, the Belhseine Leases and the Belhseine Guarantees; and

G.      Award Plaintiffs prejudgment interest against Defendants in accordance

with § 35 of the Lanham Act (15 U.S.C. § 1117); and

H.      Award Plaintiffs such exemplary and punitive damages against Defendants

as are deemed appropriate because of the willful, intentional and malicious nature of Defendants'

conduct; and

I.      Award Plaintiffs judgment against Defendants for their costs and attorney's

fees incurred in connection with this action pursuant to the Belhseine Franchise Agreements and §

35 of the Lanham Act (15 U.S.C. § 1117); and

J.      Award Plaintiffs such other and further relief as this Court may deem just

and proper.

Dated:   New York, New York

      May 18, 2018

                                  Respectfully submitted,

                                  /s/ Ronald D. Degen

                                  **RONALD D. DEGEN**

                                  MARLANA MELENDEZ

                                  O'ROURKE & DEGEN, PLLC

                                  Attorneys for Plaintiffs

                                  225 Broadway, Suite 715

                                  New York, New York 10007

                                  Tel:    (212) 227-4530

                                  Fax:    (212) 212-385-9813

                                  E-mail:rdegen@odlegal.com

                                            mmelendez@odlegal.com